**STATE, ex rel. HANRAHAN et, Plaintiffs-Appellees, v. ZUPNIK et, Defendants-Appellants.**
**STATE, ex rel. HORN et, Plaintiffs-Appellees, v. BATH et, Defendants-Appellants.**
**STATE, ex rel. BARRETT et, Plaintiffs-Appellees, v. ZUPNIK et, Defendants-Appellants.**
**STATE, ex rel. ANKLUM et, Plaintiffs-Appellees, v. BATH et, Defendants-Appellants.**

Ohio Appeals, Eighth District, Cuyahoga County.

Nos. 22630, 22631, 22632, 22633. Decided February 16, 1953.

Green, Woods, Lausche & Wilmot, Cleveland, for plaintiffs-appellees.
Joseph H. Crowley, Director of Law, James M. McSweeney, Asst. Director of Law, Cleveland, for defendants-appellants.

(HUNSICKER, PJ, DOYLE, J, STEVENS, J, of the Ninth District sitting by designation in the Eighth District.)

**OPINION**

By DOYLE, PJ.

The appeals in the four suits noted in the caption above are from judgments rendered in the Common Pleas Court of Cuyahoga County, where four separate actions in mandamus were consolidated for trial. The judgment in each case ordered a writ to issue. The many relators in each case instituted their respective suits not only for their own benefit but for others similarly situated.

In the first (both in the Common Pleas Court and here) of the four actions, the relators were retired firemen, each of whom, by action of the Board of Trustees of the Firemen's

Relief and Pension Fund of the City of Cleveland, were, subsequent to the 26th day of May, 1937, duly approved and qualified to receive monthly pensions, and their names were placed upon the rolls for payment from the statutory fund.

In the second action in the Common Pleas Court (No. 22,632 here) the relators were retired firemen who held the same status as those noted in the first action, except that they became pensioners prior to the 26th day of May, 1937.

In the third action in the Common Pleas Court (No. 22,631 here) the relators were retired policemen, who, prior to the 26th day of May, 1937, by action of the Board of Trustees of the Policemen's Relief and Pension Fund, were qualified and approved to receive monthly pensions, and their names were placed upon the rolls for payment out of the statutory fund.

In the fourth action (both in the common pleas court and here) the relators were retired policemen who held the same status as those noted in the third action, except they became pensioners subsequent to May 26th, 1937.

The cases will be referred to herein according to the sequence in which they appeared in the Common Pleas Court.

The defendants in the first two cases were the Board of Trustees of the Firemen's Relief and Pension Fund of Cleveland, and the city treasurer (the custodian of the funds); in the second two cases the defendants were the Board of Trustees of the Policemen's Relief and Pension Fund of Cleveland, and the city treasurer (likewise the custodian of this fund).

In short, it was claimed that the several Boards of Trustees had "failed, neglected and refused" to make payment to the relators of monies due them as monthly pensions falling due at a time when there was insufficient money in the funds to make payment, although at the time of filing the suits there was on hand and available or in the process of collection, sufficient funds to pay all previous awards. The petitions sought an order for the payment of back monthly pensions which had become due, the payments of which had been refused.

The following is a chronological table of the pension payments made, and an approximate percentage of pensions falling due and not paid in the six months noted.

**Firemen's Relief and Pension Funds:**

November, 1945—No payment; payroll $50,096.31.

December, 1945—No payment; payroll approximately $50,000.

December, 1946—No payment; payroll $50,001.43.

**Police Relief and Pension Fund:**

December, 1940—$9,019.97 paid; approximately 80% of payroll unpaid.

December, 1941—$22,708.08 paid; approximately 50% of payroll unpaid.

472

December, 1942—$17,707.22 paid; approximately 65% of payroll unpaid.

December, 1944—$8,800.00 paid; approximately 83% of payroll unpaid.

November, 1945—No payment; payroll $56,805.46.

December, 1945—No payment; payroll approximately $57,000.

December, 1946—No payment; payroll $59,815.81.

It was stipulated in each of the policemen's cases that:

"the * * * Board of Trustees of said Police Relief Fund did not make payment to relators, and each of them, and to other beneficiaries of said fund, of the regular monthly pension payment, or other lawful benefit payment, as established by the rules and regulations of said Board of Trustees governing such payments, for the months of December of the respective years 1940, 1941, 1942, 1944, 1945 and 1946, and for the month of November, 1945, and made payment during such months on only the amounts, in each month, as is set forth in relator's petition * * * and the balance thereof remain unpaid."

It was further stipulated that at regular meetings of said board in December, 1944, December, 1945, and December, 1946, the entire payroll was ordered paid "if and when money is available," and that "in certain other months when funds were not available, payrolls were approved and payments ordered if and when funds were available and payment of such payrolls thereafter made from after-acquired funds."

The following stipulation appears in the record in reference to the firemen:

"8. That the said Board of Trustees of said Firemen's Relief and Pension Fund did not make payment to relators, and each of them, and to other beneficiaries of said fund, of the regular monthly pension payment, or other lawful benefit payment, as established by the rules and regulations of said Board of Trustees governing such payments, for the months of November, 1945, December, 1945 and December 1946, and payrolls for such months remain unpaid."

It was further stipulated that, at meetings of said firemen's board in dealing with the payrolls of November, 1945 and December, 1946, such payrolls were each ordered paid "if and when money is available."

It appears that in the several instances of fund deficiencies, the statutory 3/10th of a mill tax levy, plus other revenue, was not sufficient to maintain a proper balance in the funds, or else the maximum levy was not made by the authorities. It likewise appears that the city of Cleveland did not, at these times, contribute from its general fund to make up the deficit, although, at other times, it did contribute generously. See old and amended §§4605 and 4621 GC.

In the year 1947, the legislature of the State of Ohio seemingly took cognizance of the inadequate amount of money to pay all pensions in the police and fire pension funds throughout the state, and it undertook to supply to the several funds throughout the state additional revenue. The legislation, insofar as it refers to municipal corporations, is in the following terms (§4631-4 GC):

"There is hereby created in the state treasury a fund which shall be designated as the 'local police and firemen's relief and pension fund.' The treasurer of state shall be the custodian of the fund and the fund shall be distributed in the manner provided for in this section. The fiscal officer of each municipal corporation in which a police or firemen's relief and pension fund has been established pursuant to the provisions of §§4600 or 4616 GC, shall, during the month of March, 1948, and each March thereafter, certify to the auditor of state the name of such fund or funds, and the total value of the real and personal property as listed, for taxation, in the municipal corporation. * * *. The auditor of state shall, upon receipt of each certification provided for herein, issue a warrant on the treasurer of state, payable out of the 'local police and firemen's relief and pension fund,' in favor of each police and firemen's relief and pension fund in an amount equal to one-tenth of a mill on each dollar value of real and personal property as listed in the certification, provided, however, no distribution shall be made hereunder to any police or firemen's relief and pension fund in any calendar year if the assets of said fund as of December 31st of the next preceding calendar year are in excess of an amount equal to the assets of said fund as of December 31, 1947, plus an amount equal to one thousand dollars multiplied by the number of members of said fund and, provided further, no distribution shall be made hereunder in the year 1948, or any year thereafter to a police or firemen's relief and pension fund if the legislative body of the municipal corporation * * * in which the fund has been created fails to comply with the provisions of §§4605, 4615-6 or 4621 GC."

As a result of this legislation, both the police and firemen's funds grew in sufficient amount to not only pay all back pensions, but to leave sufficient balances to presently pay the monthly pensions as they fall due. The 1949 and 1950 year-end balances were as follows:

| | |
|---|---|
| Police Fund, 1949 | $264,590.40 |
| Police Fund, 1950 | $399,979.56 |
| Firemen's Fund, 1949 | $329,144.67 |
| Firemen's Fund, 1950 | $382,515.39 |

474

The trial court, as heretofore stated, issued writs of mandamus in each case. In the appeal to this court on questions of law, the appellants (defendants below) state in part their position in the following language:

"It is apparent that the relators have no right to the writ of mandamus erroneously granted by the trial court. The required elements are lacking; no right is shown to raid the pension fund created under the new laws of 1947 to satisfy pension claims created by the acts of trustees in unquestioned excess of authority; the pension laws of 1947 being silent on the matter can not be read as having a retrospective aspect so as to provide for the claimed past delinquencies; there is an adequate remedy in the ordinary course of law.

"There is no right and no duty and no occasion to invoke the writ of mandamus.

"The judgment of the trial court should be reversed and final judgment should be entered for the respondents dismissing the petitions herein."

This court, after considering each of the eleven claimed errors of the appellants, will now proceed to state without extensive elaboration the reasons for an affirmance of the judgments of the Court of Common Pleas.

In the first place, it must be observed that, under the law and the rules and regulations of each of the boards, the unpaid pension of each relator became due and payable on a day certain, without change or modification, and for a specified amount. In some instances the boards actually met and approved the payrolls and ordered payment "if and when funds were available." In other instances, the record does not reveal such action by the board. In all instances, however, the names were on the rolls for the payment of a certain specified amount theretofore set under the rules and regulations of the board.

Whether these pensioners were made pensioners and their names placed upon the rolls prior to or subsequent to the year 1937, is of no legal importance, because we declare the law to be that, when a particular payment under a pension **has become due,** the pensioner has a vested right to it, and, in the absence of conditions which would forfeit his right, the board has no discretion but to order its payment, whether the fund at the time is or is not sufficient for payment. This is so, even though prior to the year 1937, a pension granted by public authorities was not considered a contractual obligation, but was considered to be a gratuitious allowance, in the continuance of which the pensioner had no vested right. **Mell et al Trustees v. State, ex rel Fritz, 130 Oh St 306.** We recog-

nize as the general rule (in the absence of statutes to the contrary) the following statement in 40 Am. Jur. Pensions, Sec. 24:

"The unquestioned general rule is that a pension granted by the public authorities is not a contractual obligation but a gratuitous allowance, in the continuance of which the pensioner has no vested right, and that a pension is accordingly terminable at the will of the grantor, either in whole or in part. * * * And it is a strongly supported rule that where any particular payment under a pension has become due, the pensioner has a vested right thereto."

See also: Gibbs v. Minneapolis Fire Dept. Relief Assoc. 125 Minn. 174, 145 N. W. 1075; 54 A. L. R. 943, 98 A. L. R. 505 and 112 A. L. R. 1009 and cases cited therein.

Heretofore we have spoken of pensioners who became so, and their names placed on the rolls, prior to 1937. In the year 1937 the legislature enacted §§4612-1 and 4628-1 GC. These sections with their subsequent amendments, created a vested right in both firemen and policemen to receive the amount fixed by their respective boards if their pensions were properly granted pursuant to the rules and regulations of the board. These pensioners, therefore, pursuant to statute, were given an immediate fixed right to a present enjoyment of their pensions when due, if funds were available, and a fixed right to future enjoyment when the funds became available; and, in addition thereto, the Supreme Court in **State ex rel Cunat v. Trustees of Cleveland Police Relief & Pension Fund et al, 149 Oh St 477, 482,** made it a mandatory duty upon officials to pay a pension upon conditions fulfilled, on the theory that there was "'a **contractual obligation founded upon a valid consideration,** giving to the pensioner a vested right in his pension which cannot afterwards be impaired or revoked." (Emphasis ours.)

It follows, we think, and we so hold, that to those pensioners who became so prior to the "vested rights" statutes, there was likewise a contractual obligation to pay those installments which became due, but remained unpaid, even though the trustees could, as to those falling in that class, "pass rules" altering for future payment the pensions previously granted. **State ex rel Lemperle v. McIntosh et al, Trustees, 145 Oh St 107.** (We are speaking only of the rights of pensioners in the years in which the defaults in payment now in litigation occurred.)

It is claimed by the appellants that "the pension laws of 1947 are not retrospective, nor do they provide for any defaulted payments to pensioners in the past. The language

of **paragraph** 9 of §§4612-4 and 4628 GC is clear and un-equivocal, and admits of no strained construction. **Article II, Section 28, of the Constitution of the State of Ohio,** is as follows (Sec. 28, Retroactive Laws etc.):

" 'The general assembly shall have no power to pass retro-active laws or laws impairing the obligation of contracts * * *.' "

All legislation cannot be judged by theoretical standards, but must be tested by the concrete conditions which induced it. There are many acts of the legislature which may be properly called curative acts. They operate on conditions already existing and have both prospective and retrospective operations. They are not "retroactive" laws as that term is used in the constitution.

In the legislation now under consideration (§4631-4 GC, supra) we find it to be designed to provide additional funds over and beyond those funds acquired through other legisla-tive means for the police and fire pension funds. Nothing in the act requires the funds to be used exclusively for future pension payments falling due. Rather the legislation was designed to not only help in the payment of pensions falling due in the future, but also to save the governmental agency from continuing to violate its contractual obligations—i e., the obligation to make payment of pensions legally due. Certainly we cannot say that the pension legislation of this state was designed only to create an appearance of granting pensions, while at the same time withholding the benefits by providing inadequate funds.

When the monthly payments fell due for these pensioners, whether they became so before or after the legislation of 1937, there came into being a contract—on the part of the pensioners a completed act of service in the police or fire department, a fulfilled condition, and on the part of the pension boards a promise to pay. When full payment is made, the contract will be executed and until then the breach will continue.

It is further urged by the appellants (1) that the statute of limitations has run against some of the claims, and (2) that mandamus is not the proper remedy.

In answer to the first, we rule that, where payment is pro-vided out of a particular fund or in a particular way, the statute of limitations does not begin to run until the par-ticular fund has been provided or the method pursued.

In answer to the second, we determine that there is an absolute obligation upon the respective boards to order payment of the defaulted pensions which are now due and owing, and that the relators have a clear legal right to de-

mand "the performance of an act which the law specially enjoins as a duty from an office, trust or station." (Sec. 12283 GC.)

We have examined and considered each and every claimed error in addition to those heretofore discussed, and we find in the record no error which would justify a reversal of the judgments under review. The judgments therefore will be affirmed.

Judgments affirmed. Exceptions noted. Order see journal

STEVENS, J, HUNSICKER, J, concur.